UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

RODNEY L. KERNSTEIN,

           Plaintiff,

v.                                       CAUSE NO. 1:20-CV-300 DRL

KILOLO KIJAKAZI[1],
Commissioner of the Social Security
Administration,

           Defendant.

## ORDER AND OPINION

Rodney L. Kernstein appeals from the Social Security Commissioner's final judgment denying his disability insurance benefits. Mr. Kernstein requests remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court denies Mr. Kernstein's request for remand (ECF 1) and affirms the Commissioner's decision.

## BACKGROUND

Mr. Kernstein suffers from a variety of physical and mental health impairments. Mr. Kernstein's severe physical impairments include degenerative disc disease, rheumatoid arthritis, neuropathy, obesity, and asthma [R. 18]. Mr. Kernstein also suffers from the severe mental impairment depression [R. 18].

Mr. Kernstein filed a Title II application for benefits on December 4, 2018, alleging disability beginning June 17, 2017 [R. 15]. His application was denied initially on January 31, 2019, and again on reconsideration on February 22, 2019 [*Id.*]. His claims were heard by an Administrative Law Judge (ALJ) in a hearing on March 5, 2019 [*Id.*]. At the hearing, Mr. Kernstein amended his alleged onset

---

[1] Kilolo Kijakazi is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

date to August 16, 2017, the date after the most recent prior denial of benefits [*Id.*]. In a November 12, 2019, decision, the ALJ denied Mr. Kernstein's petition on the basis that he could not show that he was disabled as defined by the Social Security Act [R. 12-14, 25-26].

Mr. Kernstein last met the insured status requirements of the Social Security Act on September 30, 2018 [R. 17]. The ALJ found that Mr. Kernstein has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: he must avoid concentrated exposure to extreme heat, fumes, dusts, odors, gases, and poor ventilation [R. 20]. He is limited to work with a moderate level of noise [*Id.*]. He is limited to work that can be learned in 30 days or less, with simple and routine tasks [*Id.*]. The ALJ found that Mr. Kernstein was unable to perform any past relevant work [R. 24]. However, the ALJ found that he could perform a significant number of jobs in the national economy [R. 24-25]. This decision became final when the Appeals Council denied Mr. Kernstein's request for review [R. 1].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the

ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Mr. Kernstein challenges the ALJ's conclusion that he is not totally disabled. He presents four arguments of error: (1) the ALJ erred in not accounting for the medical opinion of his treating rheumatologist; (2) the ALJ did not properly account for all of his limitations in the RFC; (3) the ALJ erred in considering his percentage improvement; and (4) the ALJ did not consider Dr. Kara's opinion that Mr. Kernstein was permanently disabled under Indiana's IMPACT program.

A. *Dr. Anil Rao, Rheumatologist.*

Mr. Kernstein asserts that the ALJ did not evaluate the opinion of his rheumatologist, Dr. Rao. Mr. Kernstein asserts that paragraphs under "History of Present Illness" in two treatment notes constitute a medical opinion. In these treatment notes, Dr. Rao notes that Mr. Kernstein suffers from dull and achy pain intermittently in his wrists, hands, knees, ankles, and feet [R. 592]. Other symptoms include dry eyes, fatigue, morning stiffness for one hour, paresthesia, SICCA symptoms, and

3

fibromyalgia [*Id.*]. Dr. Rao stated that pain was aggravated by gripping, standing, walking, and cold or rainy weather [*Id.*]. Finally, Dr. Rao noted that his medications relieved his pain [*Id.*]. Dr. Rao also noted tenderness in his joints as well as mild pain with motion [R. 591]. Dr. Rao also noted that Mr. Kernstein's pain, stiffness, and limited daily activities are "related to fibromyalgia and degenerative disc disease of spine" [R. 583, 591].

> A medical opinion is defined as:
>
> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The treatment notes from Dr. Rao don't constitute a medical opinion. As an initial matter, the narrative of observations in the "history of present illness" section merely reflects a claimant's "own subjective complaints about his symptoms." *Wieczorek v. Colvin*, 2014 U.S. Dist. LEXIS 104447, 23 (N.D. Ill. July 31, 2014). As such, observations in the "history of present illness" section aren't a medical opinion. Moreover, the "history of present illness" section offers no indication of Mr. Kernstein's ability to function or how his symptoms limit his functioning. Dr. Rao's statements and findings don't constitute a medical opinion; neither his observations regarding Mr. Kernstein's

4

pain and tenderness nor his recitations of Mr. Kernstein's subjective complaints provide any statement regarding his functional limitations or abilities.

Moreover, though Dr. Rao found Mr. Kernstein's limited daily activities are related to his fibromyalgia and degenerative disc disease, he did not describe how Mr. Kernstein's fibromyalgia or degenerative disc disease limited him, not least when treated with medication [R. 583, 591]. Nor did Dr. Rao provide any statements regarding "what [Mr. Kernstein] can still do despite [his] impairment(s)" or whether he has restrictions in his abilities to complete the physical demands of work. 20 C.F.R. § 404.1513(a)(2). As such, Dr. Rao's finding that Mr. Kernstein's complaints of limited daily activities are due to his impairments is not a medical opinion.

Because Dr. Rao's treatment notes don't constitute a medical opinion, the ALJ did not "fail[] her duty to evaluate Dr. Rao's opinion" as Mr. Kernstein asserts [ECF 19 at 11]. The ALJ has no duty to examine or evaluate treatment notes from Dr. Rao using the factors in 20 C.F.R. § 404.1520c, absent a medical opinion. The majority of Mr. Kernstein's arguments revolve around his assertion that Dr. Rao's treatment notes constitute a medical opinion. Mr. Kernstein argues that the ALJ did not consider how multiple other medical opinions were consistent with or supported by Dr. Rao's opinion. However, the regulations clarify that Dr. Rao's treatment notes do not constitute acceptable medical opinions. Therefore, the ALJ wasn't required to consider whether other opinions were consistent with Dr. Rao's treatment notes. Remand is not warranted on this issue.

B.     *RFC.*

Mr. Kernstein also asserts that the ALJ did not support the RFC determination with substantial evidence. Specifically, Mr. Kernstein argues that a limitation to light work does not adequately accommodate his impairments.

An ALJ's RFC and hypothetical questions posed to the vocational expert must incorporate all of the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th

5

Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). That said, an RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The determination of an RFC is a legal decision rather than a medical one. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 LEXIS 5, at 1 (July 2, 1996).

Mr. Kernstein asserts that the ALJ didn't consider his pulmonary condition or his obesity in creating the RFC, and that the ALJ didn't consider how his obesity may impact his back and leg pain. However, the ALJ addressed Mr. Kernstein's pulmonary impairments and found them to be well managed with ongoing medication, and that his pulmonary function testing was often normal [R. 23]. The ALJ also considered his obesity, noting that the record consistently shows a BMI in excess of 36, and found that it did not affect his ability to ambulate [R. 19, 22].

More problematically, Mr. Kernstein's argument regarding his pulmonary impairments is one sentence in a paragraph discussing Dr. Rao's treatment notes, and his argument regarding his obesity two sentences [ECF 19 at 11-12]. Mr. Kernstein argues that the ALJ didn't consider a single note from his pulmonologist from 2019 that stated if he lost weight, it would likely help his sleep issues [ECF 19 at 12]. These arguments are undeveloped. Mr. Kernstein simply argues that if the ALJ had considered his pulmonary impairments and obesity, then the ALJ could not have logically concluded that he is capable of light work. That argument is bereft of any explanation as to how these impairments further limit his functioning. Nor does it offer any case law or regulations. Mr. Kernstein has not developed an argument that the ALJ erred in considering his pulmonary impairments or obesity. *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (underdeveloped arguments are waived).

      C.     *Dr. Fira Kara, Pain Management Specialist.*

Mr. Kernstein argues that the ALJ erred in relying on percentage of improvement and percentage of pain relief as described in Dr. Kara's treatment notes to find that he was not as limited in functioning as he alleged. He states that, though he reported improvement in pain, this did not translate into improvement in functioning; and he argues that the ALJ ignored a note stating that he reported "no change in ability to perform ADL's" despite improvement [R. 514]. But Mr. Kernstein ignores the sentence directly before that statement, which noted that Mr. Kernstein reported a 60 percent improvement in function since his last visit [*Id.*]. The ALJ properly relied on Dr. Kara's recitation of Mr. Kernstein's own statements of 70 and 80 percent improvement in pain following his lumbar branch blocks and lumbar radiofrequency ablations, as well as his statements of 60 percent improvement in function [R. 22]. A single statement regarding "no change in ability to perform ADLs" does not on its own indicate that Mr. Kernstein was either unable to perform ADLs or was limited by his back pain, as he reported both pain relief and improvement in functioning with his pain management treatment. The ALJ properly considered Dr. Kara's treatment notes and did not err in the analysis of Mr. Kernstein's improvement with treatment.

      D.     *IMPACT Program.*

Finally, Mr. Kernstein argues that the ALJ did not consider a 2018 opinion from Dr. Kara, which stated that Mr. Kernstein required a permanent exemption from work under the Indiana IMPACT program. Mr. Kernstein points to nothing in the medical record indicating that Dr. Kara provided any such opinion, and the court can find nothing in the record to support his assertion that Dr. Kara provided an opinion regarding his ability to work under the Indiana IMPACT program. There is a note from Dr. Greenman that stated Mr. Kernstein requested a permanent exemption from the IMPACT program [R. 706]. Dr. Greenman filled out the paperwork at that visit [R. 707]. More

7

important, there is no indication in the record that this paperwork was accepted or that Mr. Kernstein was found to be permanently exempt from work in the IMPACT program.

Even if Mr. Kernstein was granted permanent exemption from work under the Indiana IMPACT program, there is no requirement for the ALJ either to analyze or rely on that decision. "Decisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). Decisions by other governmental agencies and nongovernmental entities about whether a person is disabled, employable, or entitled to any benefits are based on the rules of that agency or entity, so aren't binding on the SSA and provide no information as to whether the person is disabled according to the SSA rules. 20 C.F.R. § 404.1504. Approrpiately the ALJ "will not provide any analysis in [her] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* The ALJ did not err in leaving any analysis of the (unseen) Indiana IMPACT paperwork out of the decision. There is no indication of what was stated in the paperwork or if it was accepted by the program, and regardless of the outcome, the ALJ had no duty to discuss the information in the decision.

## CONCLUSION

Accordingly, the ALJ's decision was based on substantial evidence. The court DENIES Mr. Kernstein's request for remand and AFFIRMS the decision of the ALJ. This order terminates the case.

SO ORDERED.

November 17, 2021                                  *s/ Damon R. Leichty*
                                                                    Judge, United States District Court